552 A.2d 1046

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Adolph P. BLACK, Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 28, 1988.

Decided Jan. 27, 1989.

Charles M. Guthrie, First Asst. Dist. Atty., for appellant.

Lawrence Hracho, Reading, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

PER CURIAM.

The appeal is dismissed as having been improvidently granted.

PAPADAKOS, J., files a dissenting opinion in which LARSEN, J., joins.

PAPADAKOS, Justice.

I must dissent from the majority's disposition of this case for several reasons. The most important of which is that their entire analysis is based upon the premise that an illegal search was the basis on which a warrant was obtained to seize contraband. My review of the record reveals that no such occurrence took place. I do not believe that there was a "search," either legal or illegal. Therefore, there was no evidence seized pursuant to a warrant based upon an illegal search. The evidence seized was admissible as it was obtained by means of a valid warrant.

The facts as summarized by the Superior Court are that:

Appellant Adolph Black is a manager and trustee of the Second Story Lounge. The Second Story Lounge is a private club reserved for members of the Reading Veteran Volunteer Firemans' Association. The club is located on the second floor of a building on Franklin Street in Reading, Pennsylvania.

In order to gain admittance to the club, one must first enter a vestibule, ring a buzzer, and display identification as to membership to a doorman seated behind a sliding partition. Behind the vestibule is a flight of stairs which leads to the second floor. On the second floor are a "back room" and a "front room" located at opposite ends of a corridor. The "back room" is an entertainment area where alcoholic beverages are served to club members.

The "front room" is listed as a card room on the PLCB forms and is part of the premises licensed for the sale of alcohol. The "front room", however, is actually an apartment which was used by appellant as his personal office.

In 1984, Agent Jan F. Llewellyn, an enforcement officer for the PLCB, was assigned to investigate a complaint concerning the Second Story Lounge. This complaint was based on information relayed to the PLCB by the Vice Division of the Reading Bureau of Police. Agent Llewellyn contacted the vice squad office and requested that municipal police participate in an "open inspection" of appellant's club. He later stated that the purpose of this inspection was to check for "possible minors and to establish the names of individuals who were working on the premises that evening." (R.R. at 8a).

At 4 A.M. on December 15, 1984, Vice Squad Police Officer Richard Garipoli accompanied several PLCB investigators on an unannounced inspection of appellant's club. Officer Garipoli did not secure a warrant beforehand. He proceeded directly to appellant's office and entered without first obtaining appellant's consent. The officer noticed appellant standing next to a table on which he observed in plain view items which the officer believed to be small amounts of marijuana, cocaine, and methamphetamine. The officer then departed, he returned with a valid search warrant at 5 A.M. and seized the suspected contraband.

Appellant was arrested and charged with offenses under the Controlled Substance, Drug, Device and Cosmetic Act. Pa.Stat.Ann. titl. 35 §§ 780–101 to 144 (Purdon 1977 & Supp.1987). His pre-trial omnibus motion was denied. After a trial by jury, he was convicted and sentence (sic) to three to twelve months imprisonment ...

*Commonwealth v. Black,* 365 Pa.Superior Ct. 502, 505–507, 530 A.2d 423, 425 (1987).

The record is silent as to the exact means by which the PLCB agents and Officer Garipoli obtained admittance into the club. However, there is no allegation that the officer gained entry by force or fraud. One must then assume that

the officer was on the premises with the consent of the Appellee. Once lawfully on the premises, he was free to go to any licensed area of the club, and the "front room" which he entered and in which he saw the drugs in plain view is listed as a card room on the PLCB forms and is part of the premises licensed for the sale of alcohol. Appellee cannot change the status of licensed premises by calling it his private office or private apartment. Unless and until he changed the areas covered by the license with the PLCB, the front remained a public area and part of the licensed premises no matter what Appellee chose to call it. The officer's entering this area is no different from his entering the men's room and finding drugs there in plain view. I am sure that such occurrence would not be considered an illegal search. Since the officer did not enter a private area and did not conduct any search, I fail to see how the contraband seized after he obtained a warrant was inadmissible because it was *not* based on "information provided by an illegal search."

Since there was no illegal search, the issue of whether the evidence was admissible at trial under the inevitable discovery exception to the fruit of the poisoned tree doctrine was not before the court. I would, therefore, reverse the decision of the Superior Court.

LARSEN, J., joins this dissenting opinion.